## No. 9112.

### E. G. RANDOLPH, FOR USE ETC., VS. A. L. LAYSARD.

Where the plaintiff in a petitory action claims the land in controversy under a title which he asserts was warranted by the author of the defendant's title opposed to him and that the defendant is thereby estopped from setting up his title against him, the fact of the warranty must be clearly established and may be disproved by evidence showing a distinct and continued acknowledgment of the title of defendant's author by those from whom or through whom the plaintiff claims.

Such acknowledgment may also be opposed to a claim of title by plaintiff based on presumption.

Even where a title has been acquired by prescription, it may afterwards be lost by subsequent adverse possession of the land, peaceable and undisturbed for more than two years, by one holding a just title translative of the property.

APPEAL from the Twelfth District Court, Parish of Grant. Barbin, J.

M. Ryan, R. J. Bowman and J. C. Ryan for Plaintiff and Appellant.

James G. White for Defendant and Appellant.

The opinion of the Court was delivered by

TODD, J. This is a petitory action. The plaintiff claims that the land in controversy formed a part of two lots received in the partition of the estate of Joseph Gillard in 1829, by Leander Lacour and wife, and John Baptiste Gillard and wife, respectively, and that by mesne conveyances from them the title to the same became vested in him, the plaintiff. He asserts title, also, by the effect of warranty and the prescription of ten years.

The defendant resists the demand and sets up title in himself first, under an entry made of the land in 1830, by Joseph Gillard, Jr., and a patent from the United States issued to him, and a regular chain of conveyances from his heirs to the ancestor of the defendant. He further pleads the prescription of ten years.

The two lots of land, described in the petition as the Leander Lacour and J. B. Gillard tracts, were a part of a league of land alleged to have been acquired by one Colin Lacour from the Pascagoula Indians and to have been surveyed and located in 1829 by one McCrimmons, and partitioned the same year among the parties in interest.

There was a survey made of this same league by the United States, it is claimed by the defendant, as early as 1816; and subsequently, in 1848, a resurvey. The private survey did not correspond with the one survey made by the Government, and the consequence was that part of the land embraced in the league as located by McCrimmons belonged

to the public domain, as shown by the Government survey, which in our opinion fixed the true location of the league.

It is contended by the plaintiff's counsel that a partition was made in 1829 between the different owners of the league as located by Mc-Crimmons, and in the plat of his survey, admitted in evidence, we find the boundaries of the several tracts or lots falling to the different proprietors under the alleged partition marked out. Admitting that there was a partition and that this plat correctly defined the several lots received under it by the several owners, with the proper boundaries, then it will appear that some, if not all, of these lots or tracts extended beyond the lines of the league as located by McCrimmons, and took in or embraced public lands, or land, to which the title of the General Government had not been divested.

It is, however, denied by the defendant that there ever was a partition made of this league, and the admission of this plat or survey in evidence to show it, as well as all parol evidence offered for the same purpose, was objected to on the grounds, substantially, that it was not the best evidence and that parol evidence was not admissible to prove title to real estate.

It should be stated here that the judicial and notarial records of the parish of Rapides were destroyed by fire in 1864, and the land in dispute then lay in that parish, and subsequently was embraced in the parish of Grant after its organization; and in this latter parish, also, the records were burned.

In view of this circumstance, and the further consideration that there must have existed some kind of a partition among the original owners of this league, from the fact that they first owned it in indivision when located and that soon after they possessed in separate tracts, whose boundaries were partially given in all the early sales, conventional and judicial, made of these tracts, and moreover that the plat upon which these lots are marked, when offered, was in possession of the parish surveyor, and for many years previous in that of his predecessor; and by one witness it was shown to be a correct copy of a copy of the original survey, which had been destroyed in his possession: The plat, we think, was properly admitted. The parol evidence objected to related more to the possession of the land, and to that extent and for that purpose was admissible.

We do not believe, however, that there ever was a formal partition of the league, either judicial or conventional, made and recorded. No one testified to ever having seen it, and some of the parties who at

times acquired one or more of these tracts, whilst the records were extant, procured copies of all the earlier titles appearing in the transcript, but not a copy of the partition.

## II.

The plea of warranty advanced by the plaintiff in support of his claim to the land in dispute is founded on this alleged partition between the first proprietors. Among these was Joseph Gillard, under whose entry or patent the defendant derives his title. It is contended that neither Joseph Gillard nor any one holding under him, in view of the warranty implied in the partition, could urge a claim adverse to any of his co-partitionists or those deriving title from them, and that they were estopped from setting up title to any part of the tracts or lots falling to them under the partition according to the metes and bounds appearing on the McCrimmons survey.

The entry made by Joseph Gillard mentioned embraced a part of the tract designated on this plat as the Leander Lacour and J. B. Gillard lots, being a portion of the rear of said lots. This entry comprised fractional section 35, in which the land in dispute lies, and is called by the witnesses the "wedge." It is as owner of these two last-named lots that the plaintiff asserts title to the "wedge."

Conceding that a warranty is as broad and far reaching as contended for by plaintiff's counsel, that it is good even against the Government and can be used as an aggressive force for purpose of eviction as well as a means of resistance (propositions we need not here discuss), we have opposed to the effect and even existence of the warranty in this instance the following facts:

When it was found that the league, as located, extended in part over Government land, Joseph Gillard entered this section 35 and other sections, all impinging more or less on the league as McCrimmons had located it in his own name as early as 1830. It does not appear that there was any offer on the part of the proprietors of the other lots to share the expenses of the entries, nor of any opposition to the entries being made by Jasper Gillard exclusively for himself and in his name. On the contrary, we have the testimony of several witnesses, including one of the Gillards and one of the Lacours, descendants of the original proprietors, to the effect that this section 35 was never claimed by Leander Lacour or J. B. Gillard, or their immediate successors, but that the title of Joseph Gillard and his succession was acknowledged. In all the titles relating to these tracts, we find no description of any rear lines, and no mention whatever of section 35, which formed part of

them according to the McCrimmons plat, until we come down to the deed from Henry M. Hyams to Judge Ryan, passed in 1857, in which there is the following reference to it, or the part of it covered by the land in controversy, to wit:

"The said Hyams refuses to give any warranty in case of eviction, even for any return of price, inasmuch as there exists a suit or suits against him in the parish of Rapides for the recovery of that part of the lands now conveyed, to the full knowledge of the said Ryan, who admits that he is aware of the danger of eviction and takes that part of the land now sold at his peril and risk."

In the face of these facts, we feel justified in the conclusion that upon the discovery that the league was in part on the public domain, there was an abandonment of the respective claims under the partition beyond the point or line where the Government lands commenced. The facts proved are inconsistent with any other hypothesis, and we think the testimony of the witnesses relating to these matters was, under the circumstances, properly admitted. There is then no warranty or estoppel that would entitle the plaintiff to a recovery of the land.

## III.

In regard to prescription:

The plaintiff bases this plea on ten years' possession of the land on the part of the original owners of the Leander Lacour and J. B. Gillard lots, and their successors, commencing and running from 1829, the alleged date of the partition.

The possession claimed rests mainly upon the contention that the disputed land was a part of the last named lots and that the actual possession and occupancy of the fruits of these lots gave or constituted possession of the whole.

From what we have said before, it is apparent that it is a controverted point whether the land in question did form part of these tracts. Beyond this description there is no satisfactory proof that there was any actual and continuous possession as owners on the part of the original proprietors from whom plaintiff claims, or their successors, upon which alone a title of prescription can rest.

## IV.

Even, however, conceding that such possession had been shown for the time stated, could it prevail against the title and possession of the defendant?

Randolph vs. Laysard.

It is undisputed that the *locus in quo* is covered by the entry and patent of Joseph Gillard defendant's author, and however the possession thereof may have been for the first ten years from the date of the entry, or even up to and beyond the time of the sale from Hyams to Ryan in 1857, it is certain that the defendant and his ancestors have been in the actual quiet and undisturbed possession of the premises from 1866 to 1881, when the suit was instituted, and under a title translative of property.

It is true that soon after Laysard acquired title in 1854, he instituted one or more suits against parties having or claiming possession of small fractions of the land.    These suits lingered on the docket for years and finally the record of them was destroyed by fire and they were never revived, because the parties had abandoned the land; and finding the possession thus abandoned after the expiration of more than ten years from the filing of his suits, Laysard, unopposed, entered into the quiet and peaceable possession of the entire tract in dispute, and he and his descendants have held it undisturbed until the present time.

These suits cannot, therefore, in our opinion, be considered as having any bearing or disturbing effect on the ten years' prescription pleaded by the defendant in bar of plaintiff's action.

V.

Finally, when we consider that the land was entered by and patented to the defendant's author, and title thereto has been claimed ever since under such entry and patent, and actual and undisputed possession held by the defendant and his ancestors claiming thereunder for more than ten years; and when we consider further that in a petitory action a plaintiff must succeed upon the strength of his own title and not on the weakness of his adversary's, we realize distinctly how comparatively weak and insufficient are the pleas of warranty and prescription upon which the plaintiff rests his demand, and how little they are entitled to prevail against the claim of defendant as presented, based upon a clear title and more than ten years' undisturbed possession under it.

Judgment affirmed.

Rehearing refused.

Manning, J., recuses himself, having been of counsel.